

**FILED**

JAN 2 5 2012

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

**********************************************************************

|  |  |  |
|---|---|---|
| SHAWN DUFFY, | * | CIV 11-1038 |
|  | * |  |
| Petitioner, | * |  |
|  | * |  |
| -vs- | * | OPINION AND ORDER |
|  | * |  |
| BROWN COUNTY, SOUTH DAKOTA, | * |  |
|  | * |  |
| Respondent. | * |  |
|  | * |  |

**********************************************************************

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 contending that he was detained at the Brown County, South Dakota, jail in violation of his rights under the United States Constitution. The United States District Court may hear and decide a petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3) by a person who is in custody but not yet convicted or sentenced. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 488, 93 S.Ct. 1123, 1126, 35 L.Ed.2d 443 (1973). A federal writ of habeas corpus may issue only upon the violation of "the constitution, laws or treaties of the United States." Stewart v. Nix, 972 F.2d 967, 970 (8th Cir. 1992); 28 U.S.C. § 2241. Petitioner contends his federal Constitutional rights have been violated in connection with his pretrial detention. This matter came on for hearing on December 27, 2011, pursuant to an order to show cause why petitioner's request for relief should not be granted. An evidentiary hearing was conducted. A transcript has been prepared and filed. Briefs have been filed and have been fully considered.

There has been a suggestion that, by allowing the Duffy petition to be heard, a floodgate will be opened to state prisoners seeking relief in federal court. I trust this will not be the case as I am not looking for more business or hearings. Even if this suggestion might come true, I took an oath to support the United States Constitution and I do not intend to close the courthouse doors to those with possible Constitutional grievances. I also seek no confrontation with the

states' attorney's office or with state court judges, my colleagues, for whom I have the highest respect. Like the umpire, however, I will call them as I see them.

The record shows that petitioner was arrested on March 17, 2011, and charged by criminal complaint in the Fifth Judicial Circuit, Brown County, South Dakota, with three counts of possessing controlled substances - Ridalin, Xanax, and Endocet - by theft, misrepresentation, forgery, or fraud, one count of keeping a place for the use or sale of a controlled substance, and one count of the use or possession of drug paraphernalia. That case, which the parties have referred to as the "doctor shopping case" is captioned CR 11-323. An initial appearance was made by the defendant in that case on March 18, 2011, before a state court magistrate who imposed a $5,000 cash bond. Duffy was and is indigent and could post no bond. He has thus been held in the Brown County jail. An attorney was appointed for petitioner on March 21, 2011. Brown County provides attorneys for indigents by virtue of a contract for a lump sum payment for one year based on a contract entered into by the county and four attorneys who jointly agreed to submit a proposal.

By state statute, a preliminary hearing must be held within 15 days after a defendant makes the initial court appearance. That deadline was April 4, 2011. This is a very important right granted to a criminal defendant. No preliminary hearing was ever held. There is nothing in the state court records showing or even indicating that Duffy ever waived his right to a preliminary hearing. In fact, the box on a state form to the effect that a preliminary hearing was waived is unchecked. There is also nothing in the record of the present proceeding to show that Duffy's attorney ever waived such right on behalf of the client. Nor could the attorney do so without the knowing and voluntary consent of the client. No motion to dismiss the case for failure to hold a preliminary hearing and follow the state statute was ever made on behalf of Mr. Duffy.

The practice in Aberdeen as to magistrate court appearances is for the attorneys to meet with the judge in chambers without defendants being present. These meetings are off the record and there is nothing for a reviewing court, whether it is the state circuit court, the South Dakota Supreme Court, or a United States District Court, to look at to determine what happened in a given case. Defendants are apparently never required to state on the record in the presence of a

2

court reporter that the defendant desires to waive the important statutory right to a preliminary hearing. There is no court proceeding in which the defendant is canvassed to see if he or she desires to waive the preliminary hearing in a knowing and voluntary fashion. We do not know here whether the defendant was ever even consulted about demanding a preliminary hearing or waiving the same. Lack of "on the record" proceedings makes it virtually impossible for a reviewing court to know what transpired as to any particular defendant, including petitioner. The difficulty in dealing with the issues before this court is compounded by the refusal of the defendant to waive his attorney-client privilege. Thus, we do not know what discussions, if any, were held between the defendant and his then state court attorney. Nor do we know what was said or not said. It is elementary that no defendant should be allowed to waive important rights unless the waiver is knowingly and voluntarily entered into by the defendant. The practice also is that once a preliminary hearing is demanded in a given case, the matter is taken before a grand jury. Once an indictment is issued, the defendant loses the right to have a preliminary hearing at which a judge would determine whether there is probable cause to believe that he committed the crime or crimes charged

Following the initial appearance, nothing happened, according to the official state court file, until April 19, 2011, when a stipulation by counsel and court order for a psychiatric examination was filed. Petitioner was transported to the Human Services Center ("HSC") in Yankton, South Dakota, on April 28, 2011, for a forensic evaluation. He was returned to the Brown County jail that same date. Duffy claims the evaluation took not more than 30 minutes at the HSC. No evidence was offered to rebut such claims. If his claims are true, this would be less than a perfunctory examination and evaluation. On May 25, 2011, the HSC issued its report finding the petitioner competent to stand trial and sent the report not to the court but to the prosecutor and Duffy's attorney. No notice of insanity was ever filed claiming that the defendant was not mentally competent at the time the crime or crimes were committed. No motion was ever filed asking the state court to determine whether the defendant was mentally competent to stand trial and to assist his lawyer. No motion for another psychiatric examination by an independent mental health expert was ever filed.

3

On April 21, 2011, a grand jury returned an indictment charging the identical charges set forth in the previous complaint with the addition of two more charges of possession of a controlled substance - Hydrocodone and Methadone.

It was not until June 30, 2011, that petitioner had an initial appearance and arraignment on the indictment. The results of the forensic evaluation were not discussed at this hearing and no order was ever entered finding the defendant competent or incompetent to stand trial. At the direction of the judge, the prosecutor and Duffy's attorney obtained a trial date of November 2, 2011, a date obviously 229 days after Duffy had made his initial appearance.

The prosecutor filed an habitual offender information on July 5, 2011.

On June 30, 2011, the Deputy States Attorney who was prosecuting petitioner's "doctor shopping case" filed a criminal complaint alleging petitioner possessed alcohol or marijuana in jail on June 10, 2011. That case was assigned case number CR 11-816. On July 5, 2011, petitioner appeared without counsel for an initial appearance on that charge. He appeared again on July 11, 2011, but his attorney did not appear and the matter was continued.

Petitioner sent a letter to a Circuit Judge dated on or about July 24, 2011, complaining, *inter alia*, about his attorney and the fact that he was incarcerated pending trial rather than released to a mental health facility. The judge had the letter filed in CR 11-323. On August 17, 2011, another letter from petitioner to the judge was filed which, again, complained about his lack of assistance by court appointed counsel.

The grand jury returned an indictment on August 8, 2011, alleging attempted possession of alcohol or marijuana in jail. The original criminal complaint had alleged actual possession of alcohol or marijuana. Petitioner appeared with the same court appointed attorney on August 31, 2011, for an initial appearance and arraignment on that indictment. Although there was some mention in the record about joining the two indictments for trial, no inquiry was made whether defense counsel and petitioner agreed to such a joinder. No order was ever entered that the two cases should be joined for trial. Mr. Duffy's attorney was requested to choose a motions deadline and the attorney arbitrarily chose October 13, 2001. The circuit judge ordered that the speedy trial deadline be tolled until that date. The judge thereafter issued an order misdated September 31 which tolled the 180 day period until October 13, 2011.

4

While all the foregoing was transpiring in Circuit Court, petitioner wrote me a letter on August 9, 2011, setting forth the charges he was facing and the factual background for those charges. This letter was consistent with letters he had been sending to the state circuit court. He complained therein that he was being unlawfully detained and court appointed counsel was not helping him. I responded to his letter. I told him: "You have no pending matter before the United States District Courts and I am therefore unable to grant you any relief. Your claims sounding in unlawful state pretrial detention may be brought in federal court pursuant to a writ of habeas corpus under 28 U.S.C. § 2241. I have not filed your letter as a petition for a writ of habeas corpus because any such petition would be summarily dismissed for failure to first exhaust your state court habeas remedies. In other words, you need to seek a writ of habeas corpus in state court, be denied relief at the local level and then appeal to the South Dakota Supreme Court and again be denied relief. I am returning your papers to you." I sent a copy of that letter (and the letter from Mr. Duffy) to the circuit court judge presiding over the case and to the state court magistrate judge.

On October 18, 2011, two more letters from petitioner to the state court judge were filed in both cases wherein petitioner complained that he was without the assistance of counsel. He requested a continuance of the November trial date, claiming his lawyer was not prepared and he was not being visited by his attorney. On October 19, 2011, another letter from petitioner to the state court was filed wherein he complained that court appointed counsel was not working on his case and that neither he nor his attorney were ready for his trial.

Petitioner sent me another letter dated October 16, 2011, wherein he complained that his rights were being violated, his attorney was not helping him, and his legal mail was being opened outside his presence, in violation of his constitutional rights. I forwarded that letter to the circuit court on October 26, 2011. On that same date petitioner wrote to the judge presiding over his case, again complaining that his attorney was not working on his case and complaining about mail issues. On November 8, 2011, the state judge filed petitioner's letter to me and my response, along with the October 26 letter to the state court judge, in CR 11-816.

No order was entered setting the cases down for trial but petitioner's purported illegible signature appears on a stipulation to continue his November 2, 2011, trial, which signature is

5

dated October 25, 2011. That stipulation was filed in CR 11-323. Based upon the stipulation, trial was continued and the statutory 180 day period was "tolled from the date of this stipulation and until a Jury Trial is held." This, of course, would be an open ended stipulation (drafted by the prosecutor) and order, apparently allowing the trial to be held years from now. Speedy trial rights could never be enforced if this is an effective and knowing waiver. Again, there is nothing to even indicate that the petitioner was consulted about this matter, let alone that he made an informed and voluntary waiver. It would be difficult to conclude that such a stipulation and order would not violate the protection and the speedy trial provision of the United States Constitution. The final document in the 11-323 file which was entered into evidence at the hearing in this matter is a stipulation and order purportedly signed by petitioner on the 19th day of October, 2011, and filed October 26. That document purports to toll the 180 day statutory period from March 21, 2011, "until an arraignment is held." He had already been arraigned in the 11-323 case. The stipulation and order made no reference to the case in which he had not been arraigned, 11-816.

Despite repeated letters to the circuit court, to me, and apparently to his attorney as well as many others, there is no evidence in the record that any person other than me responded to his concerns. On November 15, 2011, I received yet another letter from petitioner complaining that he was being unlawfully detained without the assistance of counsel and that his legal mail was being read. It was clear that his repeated attempts to raise the issue of his detention without the assistance of counsel were not being addressed. I sent his letter to the federal Clerk of Courts, directing them to file the same as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On November 29, 2011, I directed the respondent to show cause why the writ should not be granted.

On December 14, 2011, a hearing was held in state circuit court concerning petitioner's request for the appointment of a new attorney. Substitute counsel was appointed in the pending state court actions. The judge presiding in those cases directed the prosecuting attorney to discuss with substitute counsel whether the petitioner should continue to be detained, given that he had already been detained close to nine months, and to investigate the conditions of petitioner's confinement. Whatever transpired as to such discussions, if any, is unknown.

6

On December 7, 2011, I set this matter for hearing on December 27, 2011. On December 21, 2011, the circuit court held a "status hearing" in the state court cases. The judge presiding in the state court cases acknowledged Mr. Duffy's concern about the delays in bringing those matters to trial and addressed the issue of bond. The state court judge denied release based, *inter alia*, upon his concern that petitioner had previously been diagnosed with antisocial behavior, concerns about flight risk, the "very serious charges" he is facing, and concerns about petitioner being a danger to himself.

The records and testimony received at trial show that Duffy's attorney appeared in Circuit Court with petitioner three times prior to my issuance of an order to show cause. The attorney wrote perhaps six letters to petitioner during his nine month detention. According to the jail records, the attorney visited him five times for anywhere from 18 to 39 minutes each time. The attorney did visit him for 23 minutes prior to his June 30 initial appearance. According to the jail records, the attorney did not visit him again until October 14, although the attorney did appear with him in court for 20 minutes on August 31, 2011. The former attorney for the petitioner has been kind enough to furnish time records. They do not altogether match the records of the Brown County jail as to when visits were made or how many visits were made.

## DECISION

### I. Constitutional Right to the Assistance of Counsel.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence (sic)." That right attaches when "prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991) (internal quotations omitted).

The record shows that the Circuit Court did appoint counsel in both criminal cases filed against petitioner. Whether appointed counsel's assistance was ineffective is not an issue for this court at this juncture. Ineffective assistance of counsel is an issue that can be raised in federal court, if at all, in a federal habeas petition pursuant to 28 U.S.C. § 2254 following conviction and

7

sentence in state court. Of course, such federal petition could not proceed unless and until petitioner exhausted his state court habeas remedies.

Whether petitioner's claim that he has been detained without the assistance of counsel, however, must necessarily factor into a claimed intelligent and knowing waiver of his constitutional right to a speedy trial.

## II. Constitutional Right to a Speedy Trial.

The Sixth Amendment to the United States Constitution guarantees an accused a speedy trial, which right is enforced against the States under the Fourteenth Amendment. Koper v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). Upon the petitioner's demand, the state has a "constitutional duty to make a diligent, good-faith effort to bring him before the [circuit] court for trial." Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969).

An alleged violation of the State of South Dakota's 180 days speedy trial rule has no bearing on whether petitioner's Sixth Amendment federal speedy trial right has been violated. Stewart v. Nix, 972 F.2d at 970. The Eighth Circuit applies the analysis set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether there has been a violation of petitioner's federal speedy trial right. Id.

The United States Supreme Court has identified four factors the lower courts should assess and balance in determining whether a particular defendant has been deprived of his speedy trial right: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. at 530, 92 S.Ct. at 2192.

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

> * * *

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be

8

assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

* * *

We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

* * *

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

* * *

We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is

9

> hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.
>
> * * *
>
> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

Barker v. Wingo, 407 U.S. at 530-33, 92 S.Ct. at 2192-93.

In this case, petitioner has been incarcerated since March 17, 2011, approximately 9 ½ months when the petition was filed. He was charged with various offenses related to the alleged possession of prescription medication. His alleged offenses are Class 4 or 5 felonies, and a misdemeanor offense. Under South Dakota law, he is facing a maximum term of imprisonment of ten years on the Class 4 felonies, five years imprisonment on the Class 5 felony, and 30 days custody on the Class 2 misdemeanor. SDCL 22-6-1(7), (8), SDCL 22-6-2(2). On June 30, 2011, the State filed an habitual offender information. *See* SDCL 22-7-7,8, 8.1 for habitual offender punishments. He is also charged with attempted possession of alcohol in his jail cell and, since the federal court hearing, with assaulting another inmate which alleged crime took place in November of 2011. The complaint was not signed until December 30, the same day that both parties were ordered to submit simultaneous briefs in federal court. The claim is now advanced by Mr. Duffy that, in filing an additional charge on December 30, the prosecutor acted out of vindictiveness and in an attempt to prevent the federal court from issuing a writ of habeas corpus and ordering the release of petitioner. A cash bond has been set in the amount of $1,000.00 which would result in the petitioner being detained, regardless of what I might do in response to the petition for habeas corpus. Petitioner cites United States v. Campbell, 410 F.3d 456, 461 (8th

Cir. 2005) in support of his claim of vindictiveness and improper motive. The respondent has not sought leave to file any response to the claim of a vindictive prosecution and no response has been filed. The South Dakota Attorney General's office has replaced the Brown County States Attorney in representing the respondent. The filing of the charge on December 30 after the habeas corpus hearing was held and in connection with an offense alleged to have occurred in November is indeed suspicious. I have no information, however, as to the strength of the charge or any of the other circumstances.

Although there is no order setting either case down for trial, the Circuit Court apparently intends to bring some of the state charges to trial in February 2012, nearly 11 months after Mr. Duffy was first arrested. He is alleged to have possessed controlled substances immediately following his release from the local hospital's mental health unit. He claims that he had valid prescriptions for the drugs in his possession. Whether the claims of petitioner about having possessed valid prescriptions have ever been investigated is not part of the record in this court. The petitioner has not waived his attorney-client privileges and his prior state court attorney has rightfully refused to answer questions about the attorney's conversations with petitioner as well as what efforts were made on his behalf. The crimes petitioner is charged with are not the "crimes of the century". His state court appointed counsel and the state court prosecutor both testified that his criminal cases are straight forward and uncomplicated. He is alleged to have had drugs in his possession in his hotel room. He claims to have had valid prescriptions for four of those drugs. He denies any knowledge of the alleged methadone residue found in the room. As to the attempted possession of alcohol in jail charge, he is alleged to have had a small bottle containing orange juice hidden in his sock in his jail cell. The discovery in these cases totals less than 40 pages. There have been no motions filed in either case by either the defense or the prosecution. The delay, taken in the context of the lack of complexity of the cases, weighs against the respondent.

The claimed reason for the delay in bringing the prescription drug charges to trial includes an evaluation at the HSC in Yankton, South Dakota, on May 27, 2011, which petitioner claims lasted no more than 30 minutes. Respondent contends that petitioner's competency justifies a delay past the date the forensic report was received. I disagree and the contention of

11

the respondent to the contrary is rejected. There was never any motion for a competency hearing or notice of insanity defense filed. Petitioner's then attorney and the prosecutor stipulated that petitioner should be evaluated at the HSC but petitioner signed no such document. No hearing was ever held as to any issue of competency. There is absolutely no record of any kind that petitioner's case was delayed because of competency concerns. There is no question that petitioner has continued to assert he has mental health issues. However, the record is clear that his complaint is that he should not be detained in jail but instead should be receiving mental health treatment. The record is clear that most of the delay in brining his charges to trial was simple failure to advance the case. This factor weighs against respondent.

Petitioner clearly has tried personally to assert his right to a speedy trial. He has written to me and, according to respondent, to the Circuit Court, his attorney, the States Attorney, and many others claiming that he is being held without the assistance of counsel and that he does not know when he may be brought to trial. He has, however, as previously discussed, actually asked for delays (albeit based on his claim that his attorney was not in contact with him and was not ready for trial). He has advised another inmate to drag out a case as long as possible and this weighs against petitioner. No attorney has filed any motion in state court, claiming violations of the speedy trial right under the United States Constitution or under the South Dakota statutory (180 day rule) speedy trial act. Thus, the state court has not been presented with any formal motion, supported by a brief and perhaps an affidavit, to address speedy trial issues.

The Supreme Court has recognized that "undue delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration," 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett v. United States, 505 U.S. 647, 654, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992). Clearly, petitioner has been prejudiced by his detention. Perhaps his anxiety is greater than the detainee who does not suffer from mental health issues. He certainly has asserted that his mental health issues have been difficult to deal with given his claimed lack of assistance of counsel and ability to obtain the evidence he needs to support his contention that he has valid prescriptions for the drugs he is alleged to have unlawfully possessed.

12

The "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" Doggett v. United States, 505 U.S. at 655, 112 S.Ct. at 2692-93. "Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify." Id., 112 S.Ct. at 2693. This presumptive prejudice is one of the facts to consider. Id.

Balancing the foregoing factors, I find that petitioner's claims as to violations of his constitutional right to a speedy trial raise at least colorable issues.

Respondent repeatedly asserted at hearing that this Court has no jurisdiction to inquire into constitutional speedy trial matters. This claim is entirely without legal merit. The right of a petitioner to raise a federal speedy trial claim in a federal habeas corpus proceeding under 28 U.S.C. § 2241 has been clear for over 35 years. Braden v. 30th Judicial Circuit Court of Kentucky, supra. This court has jurisdiction over the matter. The petitioner, having filed what amounted to an application for a writ of habeas corpus, was entitled to the assistance of counsel and to being heard in federal court.

**III. Abstention.**

In Younger v. Harris, 401 U.S. 37 (1971), considering principles of comity and federalism, the Supreme Court held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." Gilliam v. Foster, 75 F.3d 881, 903 (4th Cir. 1996). The Younger court noted that courts of equity should not act unless the moving party (seeking the writ) has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. Younger, 401 U.S. at 43-44 (citation omitted). In the Eighth Circuit, the directive is perhaps even more narrow. "Absent extraordinary circumstances, federal courts should not interfere with the states' pending judicial processes prior to trial and conviction, even though the prisoner claims he is being held in violation of the Constitution." Sacco v. Falke, 649 F.2d 634, 636 (8th Cir. 1981) (quoting from Braden). Petitioner here does not seek an order dismissing the state charges. Such relief would be what Sacco referred to as a "severe remedy." Id. Petitioner's claim is, in essence, that his criminal proceedings are not "ongoing" but that he has been detained since March 2011, in essence

13

without the effective assistance of counsel, despite repeated attempts to contact appointed counsel and the circuit court.

"[F]ederal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." Baden, 410 U.S. at 489, 93 S.Ct. at 1127, Sacco v. Falke, 649 F.2d 634, 636 (8th Cir. 1974). A violation of South Dakota's 180 day rule found at SDCL 23A-44-5.1 would constitute an affirmative defense. However, Baden sets forth the circumstances wherein violation of a pretrial detainee's right to a speedy trial may be considered in a 28 U.S.C. § 2241 habeas action:

> Petitioner does not, however, seek at this time to litigate a federal defense to a criminal charge, but only to demand enforcement of the Commonwealth's affirmative constitutional obligation to bring him promptly to trial. He has made repeated demands for trial to the courts of Kentucky, offering those courts an opportunity to consider on the merits his constitutional claim of the present denial of a speedy trial. Under these circumstances it is clear that he has exhausted all available state court remedies for consideration of that constitutional claim, even though Kentucky has not yet brought him to trial.

Baden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. at 489-90, 93 S.Ct. at 1127.

I previously found that petitioner's inarticulate, rambling, and sometimes contradictory attempts to timely resolve his claims in state court have been futile. At this point, no lawyer has assisted him in formally raising speedy trial claims or defenses in state court. No state court judge has been presented with the formal opportunity to deal with speedy trial concerns, either under the South Dakota 180 day statute or as an independent constitutional right.

The court is required to determine whether the petitioner has exhausted his state court remedies. The Sacco court referred to an earlier case, Wingo v. Ciccone, 507 F.2d 354 (8th Cir. 1974). "Second, in *Wingo* we noted that the mailing of requests to the detainer-lodging states asking for speedy trial or dismissal of the charges 'cannot be deemed an exhaustion of his state remedies.' 507 F.2d at 357 n.11. Sacco has not exhausted his remedies in the state courts of Ohio. He concedes that he has made no effort to pursue his claims there other than writing letters to Montgomery County officials. We therefore do not review the legality of the Ohio indictment,

14

or consider any relief designed to restrain the actions of the Ohio officials (citing cases)." <u>Sacco</u> at 636.

A lawyer representing any client has a difficult job. Many challenges are presented to criminal defense attorneys. They are dealing with people often deprived of their liberty, uneducated in the ways of the law, and often overly demanding as to what must be done in a particular case. It is easy for any client to expect results that are unreasonable, forgetting often that the attorney has many more cases with which to deal. An attorney must also deal with opposing counsel and with court practices. Having practiced law for thirty years before becoming a judge, I hope that I have not forgotten how difficult it is to be a trial attorney. Having said all this, however, I have expressed the concerns I have. I do not endorse what has transpired in this case. I am troubled by what has transpired here.

However, the petitioner has failed to exhaust his state court remedies and the case does not present the required extraordinary circumstances for the writ to issue. The application should be denied.

## IV. Legal Mail.

Petitioner contends the jail is interfering with his legal mail. "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." <u>Bounds v. Smith,</u> 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). In <u>Ex parte Hull,</u> 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941), the Supreme Court held that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if 'prison administrators . . . and not the courts, [are] to make the difficult judgments concerning institutional operations.'" <u>Turner v. Safley,</u> 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2nd 64 (1987) (*quoting* <u>Jones v. North Carolina Prisoners' Union,</u> 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2nd 629 (1977)).

As explained by Chief U.S. District Judge Hovland:

> It is well-established that inmates have a right to receive mail.
> *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459
> (1989). However, that right may be limited by prison regulations that are

15

> reasonably related to legitimate penological interests. *Weiler v. Purkett*,
> 137 F.3d 1047 (8th Cir.1998). The United States Supreme Court has held
> that an inmate's privileged mail may not be opened for inspections for
> contraband outside the presence of the inmate and has defined privileged
> mail as "mail to or from an inmate's attorney and identified as such."
> *Wolff v. McDonnell*, 418 U.S. 539, 574, 576-77, 94 S.Ct. 2963, 41 L.Ed.2d
> 935 (1974); *see Cody v. Weber*, 256 F.3d 764, 768 (8th Cir.2001).

Moore v. Schuetzle, 354 F.Supp.2d 1065, 1078 (D.N.D. 2005).

In addition to First Amendment concerns, the Sixth Amendment right to the effective
assistance of counsel protects the attorney-client relationship from intrusion in the criminal
setting. Wolff v. McDonnell, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984 41 L.Ed.2d 935 (1974).
"Pretrial detainees are ordinarily most interested in communication with attorneys as a vital
component of their right to counsel in pending criminal prosecutions." Taylor v. Sterrett, 532
F.2d 462, 472 (5th Cir. 1976).

It has long been the law that legal mail sent to prisoners can only be opened in the
presence of the prisoner and only inspected for the presence of contraband. Harrold v. Halford,
773 F.3d 234, 235-36 (8th Cir. 1995). "Privileged prisoner mail, that is mail to or from an
inmate's attorney and identified as such, may not be opened for inspections for contraband except
in the presence of the prisoner." Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir.1981) *(citing*
Wolff v. McDonnell, 418 U.S. 539, 576-77, 94 S.Ct. 2963, 2984-85, 41 L.Ed.2d 935 (1974)).

Mail to or from judges is also entitled to the same protections as is mail to or from the
inmate's attorney.

In order to prevail on a Sixth Amendment claim for deprivation of the right to counsel
though interference with legal mail, petitioner must show actual and substantial prejudice.
United States v. Haynes, 216 F.3d 789, 796 (9th Cir. 2000).

> ["G]overnment intrusion into the attorney-client relationship, although not
> condoned by the court, is not of itself violative of the Sixth Amendment
> right to counsel. Rather, the right is only violated when the intrusion
> substantially prejudices the defendant. Prejudice can manifest itself in
> several ways. It results when [1] evidence gained through the interference
> is used against the defendant at trial. It also can result from [2] the
> prosecution's use of confidential information pertaining to the defense
> plans and strategy, from [3] government influence which destroys the

16

> defendant's confidence in his attorney, and from [4] other actions designed
> to give the prosecution an unfair advantage at trial.

United States v. Irwin, 612 F.2d 1182, 1186 -1187 (9th Cir. 1980) (case involving interviewing defendant without notice to counsel). If the jail's interference with defendant's attorney-client relationship "was neither accidental nor unavoidable, but was rather the result of deliberate and affirmative acts," there was a violation of the Sixth Amendment if there was prejudice. United States v. Danielson, 325 F.3d 1054, 1059 (9th Cir. 2003). The evidence at the hearing showed that respondent has policies in place concerning legal mail that comport with the First and Sixth Amendments. Further, defendant offered no evidence to refute respondent's claim that jailors acted pursuant to policy and did not in any way interfere with petitioner's legal mail. I find there was no such interference. Also, petitioner offered no evidence that he suffered any prejudice as a result of respondent's alleged Constitutional violations. These claims fail.

I thank attorney Lovrien for his significant public service in this case.

Based upon the forgoing,

IT IS ORDERED that petitioner's petition for a writ of habeas corpus is denied.

Dated this 25th day of January, 2012

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:
(SEAL) DEPUTY

17